My name is Jonathan Salovey, representing the appellant Lam Pham, and I understand we have 20 minutes per side in this consolidated case, and I will be splitting my time, 10 minutes for each defendant, and I respectfully request the court to reserve 2 minutes for rebuttal. This case presents a matter of first impression, namely whether or not under the number of victims enhancement, whether bank account holders whose accounts have been fully replenished should be counted as victims under the numbers of victims enhancement. Even though this issue does present a matter of first impression to this court, this court need not go so far in terms of deciding whether or not incidental expenses or collateral costs in dealing with the bank fraud that may have allegedly occurred should be counted in determining whether or not the account holders should be counted as victims under the loss enhancement. And the reason is because the sentencing guidelines provide this court with very clear direction. In the comment in application note 1 to guideline 2B1.1, application note 1 clearly defines the victim as any person who sustained any part of the actual loss determined under subsection B1. Subsection B1 is the actual loss enhancement. In other words, if any losses are not itemized in the actual loss enhancement, then they cannot be used to determine the number of victims under the number of victims enhancement. Can I ask a clarifying question then? There was a victim impact statement from the Kranzes, I believe, that was put into the record. They were the ones that said they had these other expenses, not insubstantial, let us say. If those expenses had been included in the total loss calculation, would that then meet your objection that had those been included as part of the total loss, then it would have been appropriate to count at least the Kranzes as a victim? Well, my answer would be no. But the important matter is what is the evidence before the court? The first important question is why no? Are you saying that that kind of loss can't be calculated as part of the total loss? The reason it should be no is because the guidelines make it very clear in terms of there's another guideline provision that talks about incidental costs of an offense. It talks about you cannot include in terms of victims costs, late fees, interest, and it's broadly stated. So if I go, if you rip me off, take my identity, cause me to my whole bank account wiped out, and I go through a period of weeks going through all of the efforts of time and energy, driving around, whatever I have to do, you're suggesting that that's just too bad? Well. That doesn't count as a loss? Even though I take time off, I have to give up, I have to get sick leave, take my sick leave, or I have to take vacation time to do that? You're really saying that the guidelines contemplate that that's just incidental? Yes, Your Honor. And understandably, there is a hassle factor without question. More than a hassle. Isn't that what Judge Lasnik said? Well, the guidelines call for pecuniary harm, right? They call for pecuniary harm, but they don't set a dollar limit on it. Like if the record showed, you know, $1 of pecuniary harm or $20, would that be sufficient to make someone a victim? I know here it's not included in total loss, which is another issue, but if the government had said that's part of their losses, would a $10 pecuniary harm be sufficient to make someone a victim? Your Honor, I think it should not. And the reason is because it becomes the tail wagging the dog. If you have expenses like replacement check costs, then it becomes difficult because you get away from the gist of the crime. It should be assumed that under other provisions, like the loss amount, it should take care of everything. What's in the loss amount really is controlling. In this case, those costs were not itemized of any of the account holders. But if we get away, if we look, if the Court looks towards what about a replacement stamp, what about ordering new checks, there may be some costs, but then you get away from the actual offense. What is the gist of the offense? Okay. If the gist of the offense is to steal someone's identity, aren't those victims or the people whose identities are stolen kind of in the target zone of the offense? They seem like they're the – maybe they don't have money harm, pecuniary harm. They are what we normally think of as the victims of an identity theft when their identities were stolen. Well, the gist of the offense in this case is fake fraud. He was convicted of bank fraud, and the bank fraud and the target were the banks who ended up footing the bill in terms of reimbursing the account. The victims were not – it's really not identity theft. That's not what was charged in this case. What was charged in this case is bank fraud. And what the real target of the bank fraud was were those accounts and the financial institutions that have to make up and replenish those accounts that have been depleted. So, yes, that is going back to the gist of the offense. And then the problem is in terms of you point out, well, where do you find a dollar amount? Where do you come? Where do you find it? Is it a, you know, $50 replacement check? Excuse me. Can I just get back for a moment to this B1, sustained any part of the actual loss determined under subsection B1? How do we know what is the actual loss determined under subsection B1? The PSR in this case was looking at an early figure that was put up by the FBI agent, $967,000 or something. What is – where do we look for that amount? Well, we look at the chart that the government submitted to the district court. The chart listed victims. There were two, actually two documents. There was an Excel spreadsheet and there was financial institutions. And adding up – Was that chart, though, was that for the loss or was that for the restitution amount? That was really to cover both, Your Honor. And it should also be pointed out that Judge Lasnik, in rendering his opinion, made it very clear, because Mr. Pham raised a number of objections. He specifically cut out from the plea agreement the $1,000 – $1,600,000 loss. He wanted to challenge his role in the offense. And specifically, Judge Lasnik, in responding, said, I rely on the indictment. I rely on the factual summary in the plea agreement and nothing else, quote, unquote, nothing else. And he essentially said, I am not considering the pre-sentence report. I'm not considering the pre-sentence report. And the problem is, is that we're left here. One reason we have the actual loss guideline is to give this court, the reviewing court's guidance. Now we're going to have to shrug our shoulders and kind of guess, well, what are the costs? They're not itemized. And that's where we go down that slippery slope. Unless it's presented, unless it's clearly out there, it's very difficult for the appellate courts to review. I'll reserve two minutes for rebuttal. Let me ask you a question for ancillary to this. Assuming that we agree with your – or enough of your analysis to say that the enhancement for victims was error and that the sentence has to be vacated, we have to send it back for resentencing. At a resentencing proceeding, is Judge Lasnik limited by what was submitted before? Or can you and the government submit any other evidence for him to consider? Well, I think the government already had its bite at the apple. My question, is it a one bite at the – do we have law that makes clear if it's a one bite at the apple situation or not? Your Honor, I do not have any authority right now to look at. I looked at what some of our sister circuits did, and I believe they just said we remand for further proceedings consistent with our order or our decision. And that's how I – I did consider that, and that's how I looked at what the other cases did. But I believe the government had its opportunity to present that evidence, and they didn't. And they really shouldn't get a second bite at the apple. Okay. Well, we'll – I'll urge Judge Fischer to give you an extra couple of minutes for your rebuttal. And we'll decide if we want any supplemental briefing on that. Okay. Thank you, Your Honor. I'm assuming the Court wishes to hear from the consolidated appellant rather than from the government. Yeah. I think that makes sense. If the U.S. Attorney can keep the arguments in mind, I suspect, by now. Good morning. May it please the Court, please. My name is Stephen Witchley, and I represent Appellant Mee Tran in this matter. Mee Tran was guilty of the crime that she pled to, and she accepted responsibility for her conduct, both by entering a timely plea of guilty and also by providing or attempting to provide assistance to the government in its investigation of the case. Yet Ms. Tran ended up with a sentence that was 10 months longer than the sentence which was meted out to one of the masterminds who orchestrated this entire bank fraud scheme. And one thing that is clear from the record is that Huang Yuan, that person, that mastermind who orchestrated this scheme, that his cooperation with the Ms. Tran's cooperation. Now, I say all this by way of introduction because it's our position that Ms. Tran's sentence, to put it in lay terms, was unfair in this case. Well, can I, before you get to the more general, in terms of the acceptance of responsibility, the government did not move for the extra point. Isn't that correct? That's correct. And was there any allegation in the district court that that decision by them was discriminatory or arbitrary or anything like that? That specific argument was not made by trial counsel. Trial counsel did, however, object to the government's failure to ask for the additional point. So what's the posture of the district court if the government doesn't move for the downward point? Is the district court free to then nonetheless go ahead and give an acceptance of responsibility reduction? Yes, if the court finds that the government's failure to so move is either motivated by an unconstitutional motive, and that is not our position in this case, or if the district court finds that the government's failure to so move is arbitrary. And that wasn't argued to the district court, so the district court didn't focus on that, did it? The specific objection was not made. The general objection was. How would a district court where the government has overtly declined to move and the defendant doesn't say that decision by the government is arbitrary or discriminatory, whatever the horrific language is that they want to ascribe to it, why would a district court reach out just on the general notion that somehow, even though the district court wasn't involved in any of the proffers or the interviews, make a decision that the government is off base? Well, the district court was on notice that the defense was objecting to the failure to move for the additional level. Could trial counsel have been more specific and given the district court the legal standard? Yes. Should that have been done? Yes. But the fact is that there was a written objection contained in the defense's objections to the pre-sentence report, which specifically objected to the failure to move for the additional level. And then on the record at the sentencing hearing, trial counsel did raise the issue again and ask the court to consider that issue. Obviously, I standing here today would be in a better posture if counsel had said arbitrary and rationally related to a legitimate government interest. He did not. Nevertheless, the district court didn't say anything about defense counsel's objections, in fact, did not pass on the issue at all. We know that the district court ruled against the defense because the district court only applied the two-level downward adjustment rather than the three. Well, why isn't her agreement in the plea agreement that she wasn't going to have the third reduction point enough to make it rational and not arbitrary? Well, the plea agreement merely says that she understands that that's what the government is going to be asking for. It does not say that she is agreeing that that's appropriate. We're not arguing that Ms. Tran did not understand that the government was only moving for the two levels rather than the three. What we're saying is that their failure to move for the additional level was arbitrary under the facts and circumstances of this case. I think understanding is not the same as agreeing or thinking that that's legally correct. But she did choose to plea with knowledge of that, which may bear on whether we can say it's arbitrary. And he stipulated to it in a sentencing memo, correct? In the sentencing memorandum, I mean, there's a bit of a disconnect there because in the objections to the pre-sentence report, trial counsel specifically objects to the failure to move for the additional level. In the sentencing memorandum, trial counsel says he stipulates to the government that the government is moving for a two-level reduction or words to that effect. I don't have the direct quote in front of me. I mean, of course the defense is going to take the two levels. They want at least that. But I don't think saying that, you know, yeah, we know the government is doing this or we agree that the government is doing this is necessary. I mean, you can still have disagreement with their failure to move for the additional level. And, Your Honor, you asked a question and I didn't have a chance to answer it. More generally, I'm having trouble seeing a handle for relief for your client. So I'll tell you my concern. Give it your best shot. First, on the reduction at two points, I do have trouble because of the plea agreement, seeing how I could say it's two rather than three is arbitrary, given that she had knowledge of it and pled. And then second, I have trouble viewing her as having a minor role, given all the names that she dished out. And then third, I have trouble viewing the sentences unreasonable, like, you know, on its application to her because I think it is below the guidelines range. So it's got this element of unfairness when you compare it to the, you know, the big shot guy who's one of the leaders of the conspiracy. It's hard to see a handle for requiring resentencing. Well, let me take those as quickly as I can in order. First of all, regarding the acceptance of responsibility adjustment, the guidelines say that in order to qualify for that additional level, that the defendant must assist authorities in investigation or prosecution of her own misconduct by timely notifying of her intent to plead guilty. The government agreed and stipulated to that exact language in the plea agreement. In other words, they said in the plea agreement she satisfies the sentencing guideline. Nevertheless, we're not going to move for that. But they did stipulate that she meets the factual predicates. And then if you look at the facts of the case, especially relative to the co-defendants, Ms. Tran was the second defendant to plead guilty in this case. She pled guilty, I think, about seven weeks after the first defendant. And the last defendant pled guilty maybe five months after she did. This case was never going to trial. I mean, Ms. Tran made a proffer. She provided information. She wore a wire at one point for the government to assist in their investigation. And there's no dispute in this case that the government knew from the outset that she was going to be pleading guilty at some point to some crime. She never made any substantive motions in the trial court or attempted to litigate anything that would have provided her any relief from culpability in the case. And, you know, as I mentioned earlier, there was evidence at sentencing produced that Mr. Nguyen, Huong Nguyen's cooperation was a direct result of Ms. Tran's cooperation. And then Mr. Nguyen, in turn, gave the government Mr. Pham, is my understanding, although much of that is under seal. So not only did Ms. Tran's conduct save the government the cost of a trial in her own case, but in a domino way, it also led to the pleas for Mr. Nguyen and Mr. Pham. There's also, you know, something in the record here about that there was significant acrimony between government's counsel and counsel for Ms. Tran. I understand that, having had contact with Ms. Tran's trial counsel. And, you know, I can't, it's hard to infer from the record, you know, how much seepage there was from the relationship between counsel into the treatment of Ms. Tran in this case. But it is difficult to understand how she ended up with the Senate she did. What would her guideline range have been if she got the third? If she got the third level adjustment and didn't get the minor role, her range would have dropped to 41 to 51 months. I think we have your brief on the rest. But you're running out of time, so you can be short and hit the three points, if you're able to answer. On the minor role adjustment, you know, again, this is in the briefing. The issue is her culpability relative to the other defendants in the case. No one's suggesting that it wasn't a crime what she did in getting that information from her workplace and providing it to Mr. Nguyen. I mean, that's why she pled guilty. The issue is what's her culpability relative to the other members involved in the scheme. And that was not, you know, addressed by the court at sentencing. The court simply said she's not a minor participant, end of story. But in order to make that factual determination, the court actually has to weigh out her culpability versus that of her co-defendants. And I went on at some length in the briefing about what the other defendants did versus what Ms. Tran did. Now I think I should probably sit down. Thank you. Thank you very much. Your Honors, good morning. Counsel, good morning. My name is Patricia Lawley. I represent the United States of America. I was also the prosecutor assigned to this case. If Your Honors would allow, I will address the My Tran issues first and then proceed to Lam Pham. The plea agreement was absolutely clear. It was certainly not arbitrary. The government was fully intended that it would not move for the third point of acceptance of responsibility. And it took that so seriously that it included that provision in the section regarding acceptance of responsibility. But that wasn't enough. During the plea colloquy, the government requested the magistrate judge to review that particular provision with the defendant. And at the time of her colloquy, she said she understood. Well, why isn't it somewhat unfair, nonetheless, for her to get a sentence greater than a ringleader's sentence? I assume you're speaking about Juan Nguyen. In the case of Juan Nguyen, Your Honor, and I understand that Ms. Tran believes that she was a cooperator in this case and that she broke the case as it relates to Juan Nguyen. And that's her assertion, but it's not true. Here it was a man in a related case, Daniel Ledger, which really broke this case open. He was the roommate of Juan Nguyen. And when we arrested Juan Nguyen, he cooperated shortly thereafter. He led us to Lam Pham, and he told us all about his connection with My Tran. Juan Nguyen continued to cooperate throughout the prosecution of this case and it did lead to a departure and to beneficial and to a substantial departure for, excuse me, a departure for substantial assistance. That wasn't the case with My Tran. And Chief Judge Lastnick heard lengthy testimony at the sentencing regarding Ms. Tran's request for cooperation, and he took that into consideration at time of sentencing when he imposed a below guideline sentence for Ms. Tran. In other words, Your Honor, she did get a benefit. While it wasn't a 5K1 departure, she did get a benefit at time of sentencing. Ms. Tran's role was crucial in this case. But for Ms. Tran, upwards of 45 Starbucks employees would have never lost, would have never lost $947,000. There was no other individual associated with the compromise of Starbucks employees' information. You could hardly call that a minor role. And Chief Judge Lastnick was correct to not allow Ms. Tran a two-point adjustment for that role. Chief Judge Lastnick was correct in imposing a sentence, a reasonable sentence in this case. And under U.S. v. Rita, U.S. v. Gall, we know that a within guideline sentence or a below guideline sentence may be treated as presumptively reasonable by this court, and it should in this case. Judge Lastnick heard quite a bit about this case before he sentenced Ms. Tran. Ms. Tran was the last of five defendants to be sentenced. He had a great pool of knowledge about this case. He reviewed material by U.S. probation. He read the memoranda prepared by both counsel. And Your Honor is correct that in defense counsel's sentencing memoranda, Ms. Tran had a reasonable sentence. He heard from the FBI agent in this case. That's rather an unusual situation. He heard from counsel and as well as Ms. Tran before he imposed her sentence. In his own words, he said, taking all of the statutory characteristics and the mitigating factors that have been presented by counsel and understanding that while I do not impose the abuse of trust, I do consider it an aggravating factor that Ms. Tran was using information that she had access to from her job in a manner that wasn't right and cheated her employer of the honest work that they were entitled to. And that's a factor that works against her. But he went on. He went on and said that while he refused to include a reduction for minor role, he did take into consideration Ms. Tran's willingness to cooperate even though it did not warrant substantial assistance departure. That is the kind of explanation that is appropriate and is sufficient by this court in U.S. v. Perez-Perez as well as under Rita and Gall. And I ask that the sentence for Ms. Tran and for the sentence that was imposed be affirmed. And if I may move now to Mr. Pham and specifically to the number of victims issue. The government does concede that this was a dispute at time of sentencing. Here the defense would argue that only a two-point enhancement should be applied for the 14 financial institutions that did absorb the $1.6 million loss. The government, on the other hand, believes that it's the 14 financial institutions as well as the individuals whose identity was stolen and their bank accounts robbed by Mr. Pham and the co-schemers. What evidence did the government submit of pecuniary harm of any of those account holders? My understanding was only direct evidence was submitted on one. Your Honor, in addition to the one letter that was supplied by the victim, the government made a proffer as to the kinds of injuries, the financial injuries experienced by other victims. And, Your Honor, the court had in another pre-sentence report another letter provided by another victim. Your Honor, it's interesting to me that in the estimation of loss that the commentary for that section allows the court to use reasonable estimates. And, in fact, it allows the court to approximate the number. This is for loss. It allows the court to approximate the number of victims multiplied by the average loss to each victim. And we allow that as it relates to trying to reasonably estimate loss. I'm losing a little bit of the thread of the argument because the guidelines talk about a victim means someone, any person who's sustained any part of the actual loss determined. And the actual loss, as I understand it, was calculated from what the banks lost. There's nothing in the total loss calculation that was adopted by the court, even to the extent that's disputed, that it all focused on what the banks had lost. How do we even get to the victims absent their having been put into the pot? There are these other types of losses being put into the pot to bring them within the enhancement definition in the first place. Your Honor, I understand your concern. And the loss, the actual losses suffered, those individuals, those individual bank holders did suffer those losses, even though they were later reimbursed. No, I understand. But isn't the total loss in this calculation where there was the enhancement for total loss, that was calculated based on the bank's loss, but per the spreadsheet? Yes. Is that correct? Yes. Okay. So there was no proffer by the government, was there, that part of the total loss included these other losses by the victims? Or was there a proffer that said, these amounts are attributable to victims, these amounts are attributable to the banks. You put them all together, you come out with 1.6 million or more, and the court went with a million. But the spreadsheet gets to a million by just looking at the banks. Your Honor, the focus of the spreadsheet, which was prepared by the FBI analyst here, the sole focus of that spreadsheet was to capture every fraudulent transaction that they could. And that is the entirety of that 34-page document includes only the fraudulent checks that were uttered across the country. That does not mean, though, Your Honor, that and I might add that by limiting it just so happens that that loss amount of that 34-page spreadsheet benefits the defense by not including these out-of-pocket expenses that by their very nature are. No, but see, that's the problem. Don't we have a predicate requirement that the victims' losses be part and be found to be part of the total loss? Is that a predicate or not? I don't believe, Your Honor, that that is a requirement for finding the financial victim loss, that rather it's the reasonably foreseeable pecuniary harm. But it has to be pecuniary, right? It does have to be pecuniary. Well, the amounts of these checks that were put into their account and taken out, you said they were reimbursed but they suffered the loss, I thought. But if it was a fake check that was put into their account that wasn't in their account, how do they suffer a loss? The counterfeit. I'm not seeing them suffering a loss from a deposit of a phony check in their account and the withdrawal of the same amount. Like if their account was $1,000 before it was deposited, their account is the same when it's deposited and taken out? In the case, for example, of Mr. Kranz, who went to buy groceries and found that his debit card was rejected for insufficient funds. Those are different kinds of potential damages. But I'm just talking about the checks right now. Do you agree that the fake checks don't count as pecuniary harm? Your Honor, the counterfeit checks were deposited into the individual's bank account. Then they took money out of that bank account. The check was returned for either a nonexistent account or insufficient funds, and the bank then held the individual holder responsible for the negative balance in their account until they were able to prove that they had been a victim of identity theft. But did they suffer any out-of-pocket loss in that transaction? Aside from what the Kranzes say, then they had to go out separately and give up vacation time and mileage and so on and so forth. But that arguably is translatable into a pecuniary amount. Isn't and didn't Judge Lasnik find, in essence, that he was looking at the victims for that latter kind of harm and wasn't buying the argument that I think may have been originally advanced by the government that, as you're saying here, there was a loss attributable to those individual victims simply by the counterfeit check going in and out? Even though the bank reimbursed and put the money back in. So I come back to my question, which is, if the district court did not find that the second category of collateral losses were part of, should be counted as, as it says, any person who sustained any part of the actual loss determined under subsection B1. If that finding isn't there, that the victims are included in whatever amount goes in there, then you don't get to whether or not you, they are a victim because they haven't suffered, they don't fit within the definition of victim. I understand your point, Your Honor. So is there any evidence in this record to show that the, say the Kranzes, there were 50 Kranzes, 51, 50 Kranzes type of evidence in the record that the judge considered and said, all right, these people suffered measurable pecuniary loss, and that is an estimate, and he makes a reasonable estimate, or he extrapolates from 25 to 50, you know, makes a reasonable estimate based on that and says, I think who were these Starbucks employees, 95 of them, at least 50 of them had measurable pecuniary losses of some amount, and that is part of the actual loss. The banks, we've calculated their component, the 14 banks at their component, and now I've got an estimated 50 or more employees who have another element of actual loss. That's not the calculation that was made here. Isn't that correct? That is correct, Your Honor. Okay. So absent that, is there any authority on the part of the district court without that evidence to move to whether or not you enhance for victims? Your Honor, just one point about the analysis here as to the individuals whose accounts were violated. You're trying to tell me what the record is. I just want to know, as a matter of construction, of construction of statutory construction, is there any authority to do it, to go to the victim's side of the equation if they weren't put into the actual loss calculation in the first instance? And before I could answer that question, in the first instance, like in the Kranz situation, where their money was lost, their accounts were frozen, and it wasn't a short-lived temporary loss as they discussed, for example, in U.S. v. Jaeger in the Sixth Circuit case. But in this instance, it was over a month where their funds were lost. So you're saying that what is attributed to the bank counts also as their loss in the sense they were a victim of whatever ultimately the bank had to reimburse, and therefore they are part of that total loss in that sense? Exactly, Your Honor. And if the court finds that these out-of-pocket expenses that these individual victims suffered, and by the way, I don't call them incidental, I don't call them when you take off three days of work and use your vacation pay or your vacation day or a personal day, that's a loss and it has a financial value to it, as does sending registered letters, printing new checks. If the record, if the court finds that those kinds of losses are reasonably foreseeable pecuniary harm when individuals like Lam Pham compromise, steal identity and compromise accounts, then if the court finds that these out-of-pocket expenses are reasonable to include for the purposes of a financial victim enhancement and if the remaining issue is whether there was sufficient evidence in this case to warrant such an application, then the government would request that this case be remanded solely for the purpose of allowing Judge Lasnik to consider the evidence that would support that kind of enhancement. Now, what about Pham's counsel's argument about the Apple argument? If we determine that the record doesn't permit the victim enhancement and has to go back for resentencing, is there precedent that says whether the government can submit additional evidence or not? Your Honor, I don't have authority today in which to give you a complete legal answer. I do believe that it would be appropriate and fair to allow the government to provide additional information, particularly in this situation where counsel is accurate that this is a case of first impression, that it would be appropriate to allow the district court to have a more to have the government provide and defense provide more information on this issue. All right. Moving back to the argument you were making to Judge Fischer and looking at the language of the definition of victim, which says sustained any part of the actual loss determined, even if we're looking at the loss of the million six from the bank accounts, the victims, the individual victims and account holders sustained a part of that loss, at least for some period of time. Is that the argument you're making? That is my argument, Your Honor. And in some cases, it wasn't a day or two. It wasn't as simple as going to the bank and saying, I didn't cash these checks in Atlanta, Georgia, when I live in Washington State. It wasn't that simple. It was a tedious and prolonged situation. And Mr. and Mrs. Krantz detail how long it took. He mentions his month of sleepless nights. So for one month, they were the victims. And the spreadsheet had that information, right, of the individual account holders and what checks were drawn. So that information was before the judge. They did have that information, Your Honor. And one of the things that I should point out is that while we have 90 different victims listed, in certain cases, those were joint accounts, like the Krantz accounts, Mr. and Mrs., we nonetheless count that as one victim, when in fact there were two individuals who hold that account. Mathematically speaking, if we have the 14 financial institutions and we have we only need 36 individuals to arrive at the four-point enhancement, that is about a little bit more than one-third of the total individuals in this case. It's reasonable that Judge Lasnik allowed and calculated that there would be individuals like the Krantz's that have suffered pecuniary harm, not minor. Thank you, Your Honors. Thank you. You have a couple of minutes. And you'll have Judge Gould to thank for that. You have Judge Gould to thank you, to thank for that. Thank you very much. He's the nice guy on the panel. I'd like to point out that Sally is correct when she says that I said it is a matter of first impression. But what is important is the matter was before the district court. The sentencing memorandums would challenge that issue. It was presented to a posting council, was presented, was read by the court, was read by a posting council. And yet we still did not get the proof. They had their opportunity. It was clearly set forth. This is not an issue where it was never raised and being raised for the first time on appeal. They had that opportunity. And part of what I'm struggling with is I was in trial counsel, and now I'm hearing on appellate review facts that are simply not in the record. And in terms of timing and what really happened, we're all struggling because there isn't a record. And what is important in terms of what the guidelines did, I think there is some good thought in terms of why they make pecuniary harm the issue. Well, can I back you up a minute? Because Judge Akuta zeroed in on this too now. Do you agree with the notion that they come within total loss simply by being victims since it was their accounts that were affected and that what we're now debating is whether, not whether they come in as victims of the actual loss, but that in order to then establish that they had pecuniary harm, they have to quantify it. And the way the Kranzes at least tried to quantify it was to show that they went through this agony and driving around, and you could put some numbers on that. Is that what we're talking about? Or do you accept or does there have to be, as I was, the thrust of my questioning was, that it has to be a separate amount from the amount affected that the banks had to deal with? There has to be something separate. Which is it? I believe it has to be something separate. But why? Part of the answer is because the guidelines say it has to be readily measurable. Yeah, but that doesn't, that's begging the question. The question is, are the victims, are these people who are affected, the 90-plus employees who are affected, are part of the loss in the sense that it was their accounts that got manipulated, the banks came back and put the money back in, that amount of money. But in the meanwhile, they had to go through a lot of steps to deal with the shortfall until that got resolved. It was more than just an overnight inconvenience, at least for this one couple. And so long as they can show that they went through something that cost them money, they've now met the pecuniary quantification. It doesn't say how much, but the guideline doesn't say how much. It just says it has to be separate. Well, I think it should be separate because the guidelines say it has to be, quote, unquote, readily measurable. That's the whole idea of the pecuniary harm. But you can tell how much was withdrawn from their account. That's in the spreadsheet. So the fraudulent checks were drawn, that amount of money was taken out of their account. They sustained that loss for a period of time until reimbursed by the bank. Why isn't that sustaining any part of the actual loss? Because ultimately they get their accounts reimbursed, and that's what the Sixth Circuit did in Yeager. The Sixth Circuit had three different groups. They broke it down in three groups. The first group were the financial institutions, the banks. They were clearly counted as victims. The second group were the group that had their accounts reimbursed, probably not very much time. The third group were the group that had to pay to reorder checks. And in that case, there was no separate proof. The Sixth Circuit said there was no separate itemization. And accordingly, under the actual loss guideline issue, in terms of itemizing it out, there was insufficient proof. And the government and the Sixth Circuit in a footnote said we're simply not going to address that issue because or we're not going to use it as grounds to rule in favor of the government because they had their chance to provide the proof. They didn't offer it. And that was sufficient. And the reason so the Sixth Circuit, in terms of the way they broke down those groups, clearly said we're not going to incorporate it. As a matter of fact, this is a novel idea. It certainly was not briefed by the government. It wasn't presented to the district court below. It's simply not there. And that's one reason why it's so important to itemize it, because then the appellate court has something to look at. Thank you very much, Your Honor. Thank you. Thanks, counsel. It was an interesting case. I appreciate the argument. The case is submitted. And we'll move to the next.
judges: Fisher, Gould, Ikuta